Oral argument this morning is number 2008-1559, Cipriani Group v. Orient-Express. Mr. Gittes? Gittes. Gittes. Is that correct? Gittes is correct. Okay. Step on up and you can begin whenever you're ready. Before you start, I just want to confirm. You've allotted 13 minutes for your main argument and 2 minutes for rebuttal. Is that correct? Yes, sir. Okay. Go ahead whenever you're ready. The issue before this Court reduces to a single straightforward question. Mr. Gittes, speak up a bit. I'm sorry? Speak up a bit. Yes, sir. Thank you. Is Cipriani's interpretation of the settlement agreement reasonable? If Cipriani's interpretation of the settlement agreement is reasonable, summary judgment was improper according to the law of the Second Circuit, and the TTAB decision should be reversed. I don't understand. I saw that you made the point that the question is whether your interpretation is, quote, reasonable. I never thought that that was the way we construed contracts. I thought we construed contracts, first, to see what the language of the contract is about, and secondly, to determine what the party's intent was as we can understand it from the contract. I didn't think that party's reasonable construction got any particular benefit. There could be two totally different but totally reasonable constructions. Why should we prefer yours over his? I would respectfully submit, Judge Plager, that if there are two reasonable interpretations, that contract language is ambiguous within the context of the Second Circuit law. I don't happen to agree with you. I think this contract is as plain as you could write. But putting that aside for the moment, even assuming there were two reasonable constructions, why should we prefer yours? I'm not asking you to prefer mine. What I'm asking you to do— So the test is not whether your construction is reasonable. No, what we're saying—and I'm sorry we didn't say it more plainly—is if there's two reasonable constructions, by definition, under Second Circuit law, that contract is ambiguous. And when a contract is ambiguous, it can't be resolved on summary judgment. I assume, Mr. Gibbs, what you would say is we look at the two—in your view, we should look at the two interpretations that have been advanced by the parties, right? Yes, sir. And we should then say, okay, based on the language of the contract are both of these reasonable interpretations, right? That's correct. And then if we find that they are, you say that leads us to the conclusion that the contract is ambiguous, right? I mean, I just want to make sure I understand. That's what you're saying? The TTAB should have found it ambiguous and determined that they could not resolve the ambiguousness on summary judgment. And what should the TTAB—assuming that was correct, what do you say the TTAB then should have done? They should have allowed the discovery to go forward, taken testimony, and found fact, but not on the basis of summary judgment within the four corners of the settlement agreement. Normally, I've always thought that we look at the language of the contract and determine whether on its face it's ambiguous. You're saying we should sort of maybe change that approach a little bit and say if there are two reasonable interpretations, it's ambiguous, or is there any difference there? I don't think there's a difference. Let me read you a quote. Why don't you tell us where you see the—it might be helpful for your case if you indicate where in the language of the contract you say there's ambiguity. There is ambiguity in paragraph two and paragraph one of that contract, at least. And I take paragraph two first because it applies to Cipriani, and that's what the TTAB interpreted. Under the plain language of paragraph two, Cipriani remains free to use its name with any other word, either in combination or separately. For example, if you take the example Cipriani pasta. I'm sorry, Cipriani what? Pasta. Now, let's take the language of paragraph two rather than your interpretation of it. Very well. Where do you get from that language that it provides you can use the name alone? Explain that to me, please. The language is plain. It says Cipriani may conduct any business it chooses to engage in, providing that it is designated— What does it refer to? I would assume the business or the product. I would assume so, too. Any business. Okay, go ahead. Or product. If a business is designated, keep reading, you can leave out the clause within the commas because it won't matter here. All right. Providing that it is designated as Cipriani— As Cipriani. Go ahead. With the identity of the product or service offered, or any other descriptive terms or name— Stop right there. Doesn't that say to you that you can conduct any business that is designated as Cipriani with something else? Doesn't it say that? I don't believe so. Okay. Why not? Because all it requires—and we stopped before I read in connection therewith. Well, that's part of the accept clause. Perhaps. No. You have a different way to read it? I would have put commas in there to make it clear whether it was or it wasn't. It's not clear. It's ambiguous. And for that reason, I think we can use the mark Cipriani so long as the box or goods are marked plainly with their nature. In other words, Cipriani, tagliatelle, etc. You and Judge Prager were discussing the end of that sentence, the words in connection therewith. What do you say therewith refers to? Cipriani. Connection isn't with, and connection isn't associated. In connection, you say therewith refers to Cipriani? Yes. Except use of the word hotel. Could I also take the liberty of pointing— Oh, so you're reading it as if it said, except use of the word hotel is okay in connection with the word Cipriani. So the use of the word hotel Cipriani is accepted. No. No. I'm saying—I'm sorry. Is accepted, yes. Excepted. Yes, sir. I'm sorry. So you're saying paragraph two should be read as if it makes hotel Cipriani an exception. The phrase, that one single phrase. I think that's very clear. I think that's very clear. How does that square with paragraph four, which seems to me continues much the same thought that we're discussing now, except that I don't think paragraph four can reasonably be construed as supporting the construction you're asserting now with regard to paragraph two, because paragraph four says you can exhaust your inventory of things that contain only the name Cipriani. Judge Moore, I would submit that paragraph four is a standard boilerplate that's used in all agreements like this, which allows the defendant to get rid of products that the plaintiff was having a difficulty before there's a problem. If the court wishes to compare paragraphs, I suggest that the court compare paragraph one with paragraph two. Paragraph one clearly, emphatically, and explicitly requires that Cipriani not be used by Cipriani Hotel. There's no two ways about it. If the parties wanted to exclude Cipriani's use of plain Cipriani in paragraph two, they knew precisely how to do it. This court... You haven't really answered the question about paragraph four other than to say, ignore it. I mean, that's what you're telling us. Paragraph four doesn't matter. Is that what you're saying? Because Judge Moore points to the fact that paragraph four sounds like it's an exception to the principles being set out. That is, to the extent you have present inventory using only the name Cipriani, go ahead and use it up. And your answer to that is ignore that. Is that what you're saying? No, it's not. Nowhere in your brief do you even discuss paragraph four that I could find. I don't believe it was really raised. But in point of fact, in the restaurants, there were ashtrays marked Cipriani. You don't use those up and throw them away. Same story with other items and fixtures. Yeah, but the implication in that is once you use those up, you can't use the name. Is it Cipriani or Cipriani? It's Cipriani, sir. You can't use the name Cipriani anymore by itself. Isn't that the clear implication? That's the implication from paragraph four. You get a contrary implication from the last sentence of paragraph one. The agreement is facially ambiguous. Well, wait a minute. I don't see how the last sentence of paragraph one contrasts with paragraph four. I think it's pertaining to a slightly different thing, which is paragraph four is pertaining to the use of Cipriani and paragraph one is pertaining, that sentence is to the hotel Cipriani, right? How is it that you think that these two sentences are exactly opposite or contrary to each other? Paragraph one says that Cipriani... You can't use the name Cipriani alone in any restaurant. Is that what you're referring to? Which part of paragraph one do you think is contrary to paragraph four? It says hotel Cipriani... ...in a restaurant located in a city in which Arrigo is already using the Cipriani name in a restaurant. That seems to me to facially indicate if he was using the Cipriani name in a restaurant, he could continue to do so. Mr. Gittes, you're into your rebuttal. Do you want to save the rest of your time? Yes, sir. Okay, well, Mr. Gittes will have his full two minutes of rebuttal. Thank you. Mr. Snyder? Yes, sir. May it please the court, the central and controlling point in this case, as I hope the court indicates it understands, is that paragraph two of the settlement agreement, by its plain and unambiguous language, precludes appellant's use of the term Cipriani by itself to designate business operations. If we agree that it's not quite so plain, that there are some inconsistencies perhaps, or at least there are some opportunities to construe this rather simple agreement in different ways, then we have to send it back, is that right? Your Honor, if in fact the language is unambiguous, it can be decided, the issue can be decided on summary judgment. If there are legitimate, conflicting, reasonable interpretations, then I think I would have to admit that the court could decide that there is insufficient basis to take the case up and rule on summary judgment. But we appellees disagree that that's the case. You think there's no reasonable way to construe it other than your way? Yes, sir. And how do you get there? Well, first of all, the express language of paragraph two imposes a requirement that any business conducted by appellant be designated as Cipriani with the identity of the product or service offered or any other descriptive term or name except hotel, which you've already been over. The language of paragraph two, which incorporates the expression providing that any business can be engaged in providing that and then I just recited the proviso, means that the business can be engaged in and expressions comprising Cipriani can be used in connection with the business but on the condition that, which we say providing that means, on the condition that the products or services, the business, be designated as Cipriani with a descriptor. Well, except the descriptor hotel. Except the descriptor hotel because, of course, appellees own rights in hotel Cipriani. So the effect of that would be to partition uses of composite terms incorporating Cipriani into one subset, hotel Cipriani, and another subset, all other composite expressions which comport with the other requirements. What then is the rule that applies to hotel Cipriani, the accept clause? What does that accept clause authorize? In paragraph two, Your Honor? Yeah. Well, what we understand paragraph two to mean, and in particular with the accept clause, is that appellant can use Cipriani plus Harry Cipriani, so therefore plus Harry. Could use Cipriani Joe Smith. Could use Cipriani potato chips, Cipriani pasta. However, appellant can never use Cipriani in combination with the word hotel because then there would be overlap with appellee's use of hotel Cipriani. And the point is that the way the agreement is written, there is a partitioning of the universe of expressions which are Cipriani and one or more other words into two mutually exclusive sets, hotel Cipriani and all the other ones. And hotel Cipriani belongs to... Appellees. Appellees. Yes, sir. All the other combinations belong to them as well as to you. No. Our client is not supposed to use... This is in the United States now. Right. That's another issue. But our clients are not supposed to use anything but hotel Cipriani in the United States. That you have, according to your interpretation, you have exclusive use of hotel Cipriani in the United States. Yes, sir. And they have exclusive use of Cipriani and potato chips or anything else in the United States. Yes, sir. That's how you read paragraph 2. Yes, sir. Well, and paragraph 1, of course, because paragraph 1 is what applies to appellees. Right. All right. And what do you make of paragraph 4? Well, paragraph 4 is a phase-out provision, which is an exception to the general rule that is set up in paragraph 2. Namely, that inventory which has on it Cipriani alone can be sold off, and when it's exhausted, that's the end. And that would fit very nicely with paragraph 2's requirement that Cipriani be used only in combination with one or more other descriptors, appellants. Mr. Snyder, this agreement is dated April 4, 1997, and, I mean, it's in the record. I don't recall exactly when. When was the application filed? I'm sorry? The resident proceedings in the TTAB. This is two consolidated, actually it's four consolidated oppositions in respect of two applications, because there were two oppositions. So when were the applications filed? In 2005. So you had an eight-year period here, and correct me if I'm wrong, I realize there was some litigation in Europe, right? There has been litigation in Europe, which as I understand it, commenced in 2006. So how about in the United States? Nothing happened between 1997, when the case was settled, by the settlement agreement, and in terms of dispute, 2007, I guess, when our clients lodged oppositions. One of the doctrines that we encounter sometimes in government contract cases is the proposition that you look to see whether during the period of the contract or during the period of contract performance, there was a dispute between the parties, and if you see a situation where the parties go for a long time, apparently agreeing on a certain approach to the contract, that can influence your view, and I was asking in that context. Well, Your Honor, it's covered in Appelli's brief. As far as we can discern, and as far as we can tell in addition from Appellant's filings, Appellant has not coined any business name used in the United States, which is Cipriani alone. I believe there are 22 that Appellant listed in its brief, and I think we got 19, which were composites of Cipriani plus one or more other words. There were no uses, as far as we could tell in that connection, of Cipriani alone. In addition, there were some applications or registrations directed to Cipriani alone, filed by Appellant or Appellant's affiliates, which after the settlement agreement were either allowed to go abandoned or were not maintained, either by filing of a Section 8 or a renewal application. And on the other hand, there were procurements of registrations by Appellant or its affiliates, which were directed to marks that had Cipriani and one or more additional words in. And so the point was made in our brief that this would appear to be a course of conduct that's consistent with the interpretation that Appellant's say should be adopted. Now, granted, in 2005, Appellant embarked on a new course of conduct, presumably because it was dissatisfied with how the settlement agreement limited its options for naming or branding, trademarking its products and services. But for quite a while... Are there many of these Hotel Cipriani's in the United States? No, sir. The only Hotel Cipriani currently, as far as I know, is in Venice. Now, it's a world-famous name and mark. And in addition, it is a service mark that's used in the United States for taking reservations and maybe doing bookings and that sort of stuff. And, in fact, the mark is registered for that. So there are U.S. rights in Hotel Cipriani. There are also world-famous rights in Hotel Cipriani. The latter would be owned not by Appelli Orient Express Hotels, Inc., which is a U.S. entity, but instead by Hotel Cipriani SRL, which is the Italian owner of the hotel, and its world-famous rights, in an overlapping way, project into the United States, insofar as that can happen, and we believe they do. May I continue? Certainly. Okay. You have three minutes and 24 seconds. Okay. Well, I will say I want to circle back for a moment. But the agreement is a settlement agreement. It's not just any commercial contract. It's a settlement agreement. The purpose of settlement agreements is to settle a litigation and to avoid the expense and the tribulation of that experience. And as recognized by the Supreme Court, parties give up things they cherish all the time in order to settle litigation. So the notion that the name and the right to use the name Cipriani alone was so important to Appellant is really irrelevant to the purpose of the agreement. And the purpose of the agreement was to settle a litigation, presumably in a way, that would partition the marks, keep the public from being confused, and satisfy the needs of the litigants at the same time. In addition, there's no real nexus in any event between whatever extrinsic evidence might have been alleged by Appellant and the intent of appellees. And if you're going to look to see what contract language means as a function of extrinsic evidence, all the case law we can find and is cited in the briefs, and that's Appellant's case law too, indicates that it is the intent of the parties, plural, jointly, that has to be evidenced. And we don't see how any of the extrinsic evidence of whatever you would call it, extensive pervasive promotion of the Cipriani image by Appellant, if that's the case, could ever reflect on what appellee's intention was in entering into the settlement agreement. So it's irrelevant. I'll also say there's an unclean hands defense. And that depends on, as a necessary but not sufficient condition, that depends on Appellant's carrying the notion that paragraph one of the settlement agreement is not limited to the United States. And that in fact, when appellee's affiliates either took out a registration of Cipriani alone abroad or engaged in litigation with or administrative contests with Appellant or Appellant's affiliates abroad about uses of Cipriani by them abroad, their unclean hands case depends upon the notion that the settlement agreement extended an obligation to use hotel to appellees all around the world, not just limited to the United States. And as pointed out in our briefs, we think that's also not a reasonable interpretation, and therefore unclean hands fails as well. And in any event, in addition to a contract breach, there would have to be evidence of bad faith or inequitableness, and that's not been forthcoming either from Appellant. Thank you, Mr. Snyder.  Well, thank you, gentlemen. Just to touch on the general environment, this agreement was signed in 1997. In 1998, the Hotel Cipriani sought coverage for the Mark Cipriani in Europe. We do not feel this settlement agreement is limited to the United States for reasons put out in our brief. In 2005, Cipriani opened up a restaurant in London called Cipriani London. He was sued for infringement by the appellee based on their marks. So the agreements have not been going merrily along. No, I realize there was some litigation in Europe. I mean, that's in the record before us. More than litigation. The appellee obtained the Cipriani Mark by itself in Europe, and they did it in 1998. This is not a situation of Cipriani being the Johnny Come Lately. The Johnny Come Lately is the Hotel Cipriani. Cipriani founded Hotel Cipriani and then sold it out to his partner, and subsequently it ended up in the hands of the appellee. I would just quickly point out that this court, in Thatcher v. Cole's Department Store, indicated that in a situation like ours, where paragraph one specifically excludes use of Cipriani, where paragraph two does not, they have held that the absence in paragraph two is profound, and it's the functional equivalent of the party's expressed intent to exclude that language. I would also ask the court to consider that in the Second Circuit, in an action on contract, summary judgment is perforce improper unless the terms of the agreement are wholly unambiguous and no material facts are in dispute. When the written contract is ambiguous, a tribal issue of fact exists as to its interpretation precluding the entry of summary judgment, and that's Lieberman. Just recently, and too recently to be included in my briefs, the Second Circuit in J.A. Apparel v. Joseph Abood, which is 568 Fed Third 390, and it came down June 10, 2009, the Second Circuit applied these principles, reversing summary judgment and finding an ambiguity in a contract provision regarding sale of trademark rights by a famous designer who argued that he did not sell his rights to use his name as a designator of his goods and services. That's what's happened here. Thank you, Mr. Gitter. Thank you. Again, Mr. Schneider, thank you. The case is submitted.